# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GINA MARIE KIRKHART,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-241
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Gina Marie Kirkhart, brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying her application for disability insurance benefits ("DIB"). This matter is before the

Court on plaintiff's statement of errors (Doc. 6), the Commissioner's response in opposition

(Doc. 12), and plaintiff's reply (Doc. 13).

## I. Procedural Background

Plaintiff protectively filed her application for DIB on February 6, 2015, alleging

disability since October 14, 2010[4], due to Stage 3 degenerative disc disorder, sciatica, glaucoma,

arthritis, asthma, depression, anxiety, hypertension, fibromyalgia, Barrett's esophagus, and

tachycardia. (Tr. 208) The application was denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative

law judge ("ALJ") Peter J. Boylan. Plaintiff and a vocational expert ("VE") appeared and

testified at the ALJ hearing on April 17, 2017. On August 4, 2017, the ALJ issued a decision

---

[4] Plaintiff asserts in the Statement of Errors that, "While she alleged an onset date of October, 2010 (Tr. 193), a
more appropriate date is December, 2014 following a low back injury. . . ." (Doc. 6 at 1). The record does not
show that the alleged onset date was amended at the administrative level after plaintiff filed her application for DIB.
The alleged onset date for the application at issue in this appeal is therefore October 14, 2010. (*See* Tr. 55).

denying plaintiff's DIB application. This decision became the final decision of the Commissioner when the Appeals Council denied review on March 22, 2018.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2015.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of October 14, 2010 through her date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: major joint dysfunction, spine disorder, loss of central visual acuity, affective disorder, and anxiety disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except as follows: the [plaintiff] could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; however she should never climb ladders, ropes or scaffolds. The [plaintiff] must avoid concentrated exposure to vibration, with no use of heavy hand-held or vibrating equipment. She must avoid concentrated exposure to workplace hazards, such as dangerous machinery or unprotected heights. The [plaintiff] is limited to simple, routine tasks. She should never perform

3

production rate pace work. The [plaintiff] is limited to simple, work-related decisions. The [plaintiff] is limited to frequent interactions with supervisors and occasional interactions with co-workers. She can have no interaction with the public as part of her job duties. The [plaintiff] is limited to tolerating occasional changes in a routine work setting.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] ... 1968 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date[] last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from October 14, 2010, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 55-64).

---

[2] Plaintiff's past relevant work was as a caregiver and a home health aide, both semi-skilled jobs generally performed at the medium exertion level. (Tr. 62).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled jobs such as marker, with 4,339 jobs locally and 433,900 jobs in the national economy; folder, with 3,780 jobs locally and 439,000 jobs in the national economy; and mail clerk, with 30 jobs locally and 3,512 jobs in the national economy. (Tr. 63). The ALJ also relied on the VE's testimony to find that if plaintiff was limited to sedentary work, she would be able to perform the unskilled jobs of lens inserter, with 1,200 jobs locally and 241,910 jobs in the national economy; document preparer, with 33 jobs locally and 66,664 jobs in the national economy; and service system monitor, with 93 jobs locally and 16,508 jobs in the national economy. (Tr. 63-64).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

On appeal, plaintiff argues that the ALJ erred by: (1) formulating an RFC that is not

supported by and is inconsistent with the ALJ's findings, the medical opinion evidence, and

plaintiff's testimony related to her mental and physical limitations; (2) failing to adopt

limitations assessed by the consultative examining and state agency reviewing psychologists,

despite giving their opinions "some weight"; (3) failing to properly evaluate plaintiff's subjective

complaints in light of the regulatory factors; and (4) posing a hypothetical to the VE that was not

supported by the record evidence.   (Docs. 6, 13).

**1.  The ALJ's RFC finding (first and second assignments of error)**

Plaintiff alleges as her first and second assignments of error that the ALJ erred by

formulating an RFC that is not supported by, and is inconsistent with, the ALJ's findings, the

medical opinion evidence, and plaintiff's testimony related to her mental and physical

limitations.[5]   (Doc. 6 at 3-5).

The Social Security regulations vest the Commissioner with responsibility for reviewing

the evidence and issuing a decision that is supported by substantial evidence.   Physicians render

opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's

capacity to work lies with the Commissioner.   *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x

435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F.

App'x 574, 578 (6th Cir. 2009)).   The ALJ is responsible for assessing a claimant's RFC based

on all of the relevant medical and other evidence.   *Bingaman v. Comm'r of Soc. Sec.,* 186 F.

App'x 642, 647 (6th Cir. 2006) (citing 20 C.F.R. § 404.1546(c); 20 C.F.R. § 404.1545(a)(3)).

---

[5]  Plaintiff's second assignment of error is duplicative of the first assignment of error, and the Court has therefore considered them together as a single assignment of error.

6

"The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); 20 C.F.R. § 404.1545. A decision supported by substantial evidence must stand, even if the Court might decide the question differently based on the same evidence. *Blakley*, 581 F.3d at 406.

Under the Social Security regulations, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for her opinion and the degree to which her opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(c)(3). Where the record does not include a treating or examining physician's medical opinion, the ALJ's decision to credit a non-examining source's opinion withstands scrutiny "[s]o long as the ALJ's decision adequately explains and justifies" the disability determination as a whole. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

### i. *Mental RFC finding*

Plaintiff argues that the ALJ committed several errors when formulating her mental RFC. First, plaintiff argues that the ALJ erred by fashioning a mental RFC which the ALJ inaccurately described as "consistent" with the limitations assed by consultative examining psychologist Dr.

Taylor Groneck, Psy.D., and as "more limiting" than the mental functional assessment of the state agency reviewing psychologists. (Doc. 6 at 3, citing Tr. 57, 116-120, 328-33). Plaintiff argues that the mental RFC formulated by the ALJ is "not more restrictive than found by the State Agency and is not the same as Dr. Groneck found." (*Id*. at 5, citing Tr. 61-62) (emphasis in the original). Plaintiff also asserts that the ALJ did not account in the RFC for moderate limitations on concentration, persistence or pace which the ALJ adopted elsewhere in his written decision. (*Id*. at 4-5, citing Tr. 56, 61).

The ALJ assigned "some" weight to Dr. Groneck's conclusions on the grounds she had evaluated plaintiff only once and not in a treating context, but her opinions were consistent with the ALJ's assessment of plaintiff's RFC. (Tr. 61). In her examination report, Dr. Groneck diagnosed plaintiff with unspecified depressive disorder, with panic attacks. (Tr. 332). Dr. Groneck reported that plaintiff's ability to focus and concentrate was "marginally adequate" during the interview. (*Id*). However, Dr. Groneck opined that plaintiff may have difficulty sustaining focus for a prolonged period due to depressive symptoms; she may have some difficulty concentrating in crowded settings due to her reports of panic attacks; she may have difficulty completing tasks quickly enough; she may have some difficulty adjusting to major and unexpected changes in working conditions; and she may feel overwhelmed by tasks requiring rapid and timed performance. (Tr. 332-33). The ALJ adequately accounted for the limitations on concentration and other functional limitations assessed by Dr. Groneck by including the following restrictions in the RFC:

> The [plaintiff] is limited to simple, routine tasks. She should never perform production rate pace work. The [plaintiff] is limited to simple, work-related decisions. The [plaintiff] is limited to frequent interactions with supervisors and occasional interactions with co-workers. She can have no interaction with the

public as part of her job duties. The [plaintiff] is limited to tolerating occasional changes in a routine work setting.

(Tr. 57). Plaintiff has not pointed to any record evidence or cited any authority to show that the ALJ was required to include additional restrictions in the RFC to account for Dr. Groneck's findings. The ALJ adequately accounted in the RFC for the mental limitations reported by Dr. Groneck. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (the ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" and to "limited interaction with the public" adequately conveyed the claimant's "moderately-limited ability 'to maintain attention and concentration for extended periods'" and to "respond to changes at work" where the medical source did not place any "concrete functional limitations on [the claimant's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"); *cf. Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (a hypothetical to a VE that provides for "simple, unskilled work" is not "per se insufficient to convey moderate limitations in concentration, persistence and pace.").

The ALJ also gave "some weight" to the assessments of the state agency reviewing psychologists, Dr. Tonnie Hoyle, Psy.D., and Dr. Aracelis Rivera, Psy.D. (Tr. 62). The ALJ found that medical records generated or provided after the date of their reviews justified a conclusion that plaintiff's impairments were "more limiting" than the reviewing psychologists concluded. (*Id.*). State agency psychologist Dr. Hoyle reviewed plaintiff's file in April 2015 and opined that plaintiff was mildly restricted in activities of daily living; had moderate difficulties in maintaining social functioning; experienced moderate difficulties in maintaining concentration, persistence, or pace; and had experienced no episodes of decompensation of extended duration. (Tr. 101). Dr. Hoyle found the information provided by Dr. Groneck was

9

consistent with other findings in the record and with Dr. Hoyle's findings related to social interaction, stress and concentration and was therefore entitled to "great" weight. (Tr. 102). Dr. Hoyle determined that plaintiff's reports of "issues with depression" and her allegations showing "she would have limited functional abilities in work settings" to be "fully credible." (*Id.*). Dr. Hoyle assessed plaintiff as moderately limited in her ability to understand and remember detailed instructions and found that she would do best with short and simple instructions due to her lack of education and average intelligence. Dr. Hoyle opined that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Hoyle found that plaintiff would do best with repetitive work without strict production requirements and without close proximity to crowds due to problems with focus and depression. Dr. Hoyle assessed plaintiff's ability to interact appropriately with the general public as moderately limited, and Dr. Hoyle therefore opined that plaintiff would do best with superficial contact with the general public due to stress and panic attacks. Finally, Dr. Hoyle opined that plaintiff's ability to respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation was moderately limited, and Dr. Hoyle found that she would do best in a static environment due to depression and feelings of being overwhelmed. (Tr. 105-06). Dr. Rivera reviewed plaintiff's file upon reconsideration in July 2015 and affirmed Dr. Hoyle's assessment. (Tr. 114-16, 119-20).

Plaintiff has not shown that the ALJ erred by giving the reviewing psychologists' assessments only "some weight." Plaintiff contends that the ALJ did not account in the RFC

for moderate limitations on concentration, persistence or pace which were assessed by the reviewing psychologists and which the ALJ adopted elsewhere in his decision. (Doc. 6 at 4-5, citing Tr. 57, 62, 119-20). Plaintiff alleges that the RFC fashioned by the ALJ is actually less limiting, not "more limiting," than the reviewing psychologists' assessments. (*Id*. at 4). The Court disagrees and finds that the ALJ reasonably accounted for the moderate limitations on concentration, persistence and pace assessed by the reviewing psychologists by restricting her to "simple, routine tasks," "simple, work-related decisions," "occasional changes in a routine work setting," and no "production rate pace work." (Tr. 57). Plaintiff has not pointed to any evidence in the record that shows the ALJ was required to incorporate additional limitations into the RFC to account for plaintiff's moderate limitations in maintaining concentration, persistence, or pace. *See Smith-Johnson*, 579 F. App'x at 437; *Kepke*, 636 F. App'x at 635.

Plaintiff also has not shown that the ALJ erred by making inconsistent findings regarding her ability to interact with others. Plaintiff alleges that whereas the nonexamining psychologists assessed her as limited to "superficial contact with others,[6]" the ALJ limited her to "frequent" contact with supervisors and occasional contact with coworkers. (Doc. 6 at 4, citing Tr. 57, 120). Plaintiff argues that the ALJ's finding conflicts with his assertion that the RFC he fashioned was "more limiting" than the assessment of the state agency reviewing physicians. (*Id*., citing Tr. 62). Contrary to plaintiff's argument, the ALJ did not make inconsistent findings regarding plaintiff's ability to interact with others. Dr. Hoyle opined that "stress and panic attacks would limit [plaintiff's] ability to deal with the public and she would do best with just

---

[6] The RFC includes the following mental functional limitations: "The [plaintiff] is limited to frequent interactions with supervisors and occasional interactions with co-workers. She can have no interaction with the public as part of her job duties." (Tr. 57).

superficial contact." (Tr. 120). Read as a whole, Dr. Hoyle's assessment appears to limit plaintiff to "superficial contact" with the public, which is less restrictive than the limitation in the RFC to "no interaction with the public as part of her job duties." (Tr. 57). Further, the restrictions the ALJ imposed on plaintiff's interactions with coworkers and supervisors are substantially supported by other evidence in the record. Plaintiff reported to Dr. Groneck that she does not like crowds but she visited regularly with family, and Dr. Groneck found that plaintiff was cooperative and appeared to be "open, honest, and forthcoming." (Tr. 330, 332). Plaintiff denied problems getting along with others at her past jobs or current social problems, and Dr. Groneck reported that plaintiff "appears to have adequate social relationships at this time," she had never been fired from a job, and she appeared "capable of conforming to social expectations in a work setting." (Tr. 330, 333). Plaintiff has not pointed to other evidence that shows she was more limited in her ability to interact with supervisors and co-workers than the ALJ found.[7]

Plaintiff has not shown she suffers from additional mental work-related restrictions that are supported by the evidence of record and which the ALJ credited but erroneously omitted from the RFC. The ALJ's RFC is consistent with or more restrictive than the reviewing psychologists' assessment that plaintiff would do best with short and simple instructions; she would do best performing repetitive work without strict production requirements and without close proximity to crowds; panic attacks would limit her ability to deal with the public so that she would do best with just superficial contact; and she would do best in a static environment

---

[7] Plaintiff also makes allegations that relate to the ALJ's evaluation of her subjective complaints in connection with her first assignment of error. (Doc. 6 at 4-5). The Court will consider these allegations as part of plaintiff's third assignment of error.

without the need to travel. (Tr. 104-06, 119-20).

### ii. *Physical RFC finding*

The ALJ found that plaintiff had the physical RFC for light work with certain postural and non-exertional limitations. (Tr. 57). Plaintiff alleges the RFC for light work is unsupported because she experiences radiculopathy into the right leg which prevents her from sitting for six hours as required to perform sedentary work and from standing for six hours as required to perform light work. (Doc. 6 at 5). Plaintiff claims that at best, she must alternate between sitting and standing in order to perform 40 hours of work per week. (*Id*.). Plaintiff has not cited any medical or other evidence to support her allegations that radiculopathy imposes these functional limitations. Plaintiff's unsupported allegations are insufficient to show that the ALJ erred by omitting these limitations from her RFC. *See Clayburn-Day v. Comm'r of Social Sec.*, No. 1:10-cv-859, 2012 WL 423735, at *1 (S.D. Ohio Feb. 9, 2012) (a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment) (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)). *See also Dillon v. Astrue*, No. 1:09-cv-896, 2011 WL 900987 (S.D. Ohio Feb. 14, 2011) (Report and Recommendation), *adopted sub nom., Dillon v. Comm'r of Soc. Sec.*, 2011 WL 901789 (S.D. Ohio Mar. 14, 2011) ("[A] diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual.") (citing *Young*, 925 F.2d at 151); *Wallace v. Astrue*, No. 3:08-cv-405, 2009 WL 6093338, at *8 (S.D. Ohio Dec. 1, 2009) (Report and Recommendation), *adopted*, 2010 WL 1133436 (S.D. Ohio Mar. 22, 2010)). The ALJ was not required to include additional restrictions in the RFC to account for plaintiff's radiculopathy absent objective evidence supporting such restrictions.

### iii. Conclusion

The ALJ thoroughly evaluated the medical opinion evidence, objective medical findings, and plaintiff's subjective reports and formulated an RFC that was consistent with the record evidence. Plaintiff has not pointed to evidence in the record to support greater restrictions than those found by the ALJ. Plaintiff's first and second assignments of error should be overruled.

### 2. The ALJ's evaluation of plaintiff's subjective complaints (third assignment of error)

Plaintiff alleges as her third assignment of error that the ALJ erred in weighing her credibility and subjective complaints. Plaintiff contends the ALJ did not consider the regulatory factors under 20 C.F.R. § 404.1529 and SSR 16-3p; the ALJ did not adopt the "credibility" assessments of the nonexamining state agency physicians and psychologists, who seemed to find plaintiff's complaints of low back and right leg pain and her complaints related to her mental impairments to be fully "credible" (Doc. 6 at 7, 8, citing Tr. 116); the ALJ failed to take into account an alleged inability to pay for medical treatment (*Id.* at 5); and the ALJ erred by discounting plaintiff's subjective complaints related to her mental impairments based on a lack of objective evidence. (*Id.* at 5, citing Tr. 75, 237, 275, 279, 329, 419, 423; *Winning v. Comm'r*, 661 F. Supp.2d 807, 821 (N.D. Ohio 2009)). The Commissioner argues that the ALJ's evaluation of plaintiff's symptoms is supported by the objective medical and other evidence of record and therefore must be upheld under 20 C.F.R. § 404.1529(c) and SSR 16-3.

The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision issued in this case on August 4, 2017. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy

and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r. of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (Report and Recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 405.1529(c); SSR 16-3p, 2017 WL 5180304, *3-8.

Plaintiff contends that the ALJ did not consider the objective medical findings related to her low back and leg pain and radiculopathy (Tr. 358, 370-71, 375); her treatment history (Tr. 406), including treatment options that were explored but not followed (Tr. 350, 367); alleviating and aggravating factors (Tr. 358, 426); and the impact of her symptoms on her ability to perform daily activities (Tr. 79-80, 83, 86). (Doc. 6 at 7-8). Plaintiff also suggests that the ALJ was bound by the "credibility" assessments of the non-examining state agency physicians and

psychologists, who "seemed" to find plaintiff's complaints of low back and right leg pain to be "credible" and deemed her complaints related to her mental impairments to be "fully credible." (Doc. 6 at 7, 8, citing Tr. 116). Plaintiff argues that if the state agency medical sources did fully credit these subjective physical complaints, she cannot sustain work for 40 hours per week and is disabled. (*Id.* at 7, citing Tr. 116).

The ALJ gave "some weight" to the assessments of the nonexamining state agency medical sources and found that plaintiff was actually more limited than they had concluded. (Tr. 62). The ALJ was not thereby bound to accept all of plaintiff's allegations related to her impairments, including those the nonexamining sources had no opportunity to review, and to find her disabled. *See Blatz v. Comm'r. of Soc. Sec.*, No. 1:11-cv-895, 2013 WL 684387, at \*13 (S.D. Ohio Feb. 25, 2013) (Report and Recommendation), *adopted,* 2013 WL 1344830 (S.D. Ohio Apr. 2, 2013). The ALJ properly conducted his own review of the record and evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. § 405.1529(c) and SSR 16-3p. The ALJ determined that plaintiff had medically determinable physical and mental impairments that could reasonably be expected to cause her alleged symptoms. (Tr. 58). However, the ALJ found that plaintiff's statements as to the intensity, persistence and limiting effect of those symptoms were not entirely consistent with both the objective medical evidence and other evidence of record. In making his determination, the ALJ thoroughly evaluated and relied on: (1) the lack of supporting objective medical evidence; (2) the conservative treatment plaintiff had received, which gave plaintiff some relief; (3) plaintiff's lack of mental health treatment; and (4) plaintiff's daily activities. (Tr. 57-62). These factors substantially support the ALJ's finding that plaintiff's allegations regarding her symptoms were not entirely consistent with the medical and other evidence of record.

16

First, contrary to plaintiff's allegation, the ALJ did not fail to consider objective findings related to plaintiff's back pain and radiculopathy. (Doc. 6 at 7). Plaintiff reported right lumbar radiculopathy to various providers in 2015 and 2016. (Doc. 6 at 7, citing Tr. 325, 1/2015; Tr. 339, 5/2015; Tr. 350, 2/2016). Dr. Richard Broder-Oldach, D.O., observed she was moving very slowly with a significant right antalgic gait due to pain and had reduced lumbar extension in in January 2015. (Tr. 325). An MRI of the lumbar spine performed on April 30, 2015 disclosed: "(1) L4-5 Grade-1 anterolisthesis with disc bulge and facet arthropathy result[ing] in severe central stenosis and prominent mass effect on both exiting L-4 roots," and (2) "L3-4 disc bulge and facet arthropathy result[ing] in mild contact of both existing L3 roots." (*See* Tr. 370-71). In May 2016, several months after plaintiff's insured status had expired, plaintiff had trace patellar reflexes and absent Achilles reflexes bilaterally, slightly decreased strength of 4+/5 and 4/5, positive straight leg raising "on the right greater than left with mostly pain from her buttock to her knee with some into her calves above the ankle as well," and some pain and tenderness on physical examination. (Tr. 375). Imaging of the lumbar spine showed degenerative spondylolisthesis at the L4/5 level, some slight degenerative changes at the T12/L1 level anteriorly, and a small anterior osteophyte at the L3/4 level. (*Id.*).

The ALJ considered the objective medical evidence, including evidence which was generated after the date last insured of December 31, 2015 and was therefore of limited probative value in this case. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). The ALJ found the objective medical evidence was not fully consistent with plaintiff's allegations related to her back symptoms. (Tr. 58-60). The treatment records show that although plaintiff complained of back, joint and neck pain, joint swelling, and muscle

weakness to treating physician Dr. Broder-Oldach as early as December 2013 during her annual physical exam, the physical examination findings at that time were normal. (Tr. 284-85). Plaintiff displayed normal range of motion, muscle strength and stability in all extremities with no pain, no sensory loss, and preserved, symmetric deep tendon reflexes. (Tr. 285). Physical examination findings were largely unremarkable or normal on visits over the ensuing several years. In December 2014, Dr. Broder-Oldach reported that sensory and motor findings were normal on physical examination. (Tr. 276). Dr. Broder-Oldach assessed plaintiff with lumbago and referred her to physical therapy. (*Id.*). In May 2015, Dr. John Bartsch, M.D., reported that the April 2015 MRI results showed moderate L4-5 central canal stenosis, severe right L4-5 foraminal stenosis, and right L4 radiculopathy; however, on physical examination Dr. Bartsch found no obvious deformities, no strength deficits, negative results on slump testing and hip impingement testing, negative straight leg raise results, and intact light touch sensation. (Tr. 340). In December 2015, plaintiff complained to pain management specialist Dr. Sairam Atluri, M.D., of constant, stabbing back pain going down the right leg, weakness in the right leg, and numbness and tingling in both legs. (Tr. 358-59). She reported that the pain began in 1990 and worsened in 2014. Plaintiff estimated she was able to function at only 30% of her full capacity, but physical examination findings at that time were normal. (*Id.*). Dr. Atluri reported no tenderness in the bilateral paraspinal muscles, facets, and sacroiliac joints; normal motor strength and no sensory deficits in the bilateral lower extremities; normal bilateral dorsiflexion and plantar flexion; and normal gait. He diagnosed plaintiff with (1) degeneration of lumbar or lumbosacral intervertebral disc, and (2) displacement of lumbar intervertebral disc without myelopathy. (Tr. 359).

18

The remaining objective findings were generated after plaintiff's insured status expired in December 2015 and are of little probative value. *See Strong*, 88 F. App'x at 845. Plaintiff saw Dr. Michael T. Rohmiller, M.D., complaining of pain in her neck and bilateral upper extremities, in August 2016, and she returned for follow-up in October 2016. (Tr. 382, 383). Plaintiff reported continued "lower extremity issues" in October 2016. (Tr. 383). Dr. Rohmiller did not make any physical examination findings related to plaintiff's back impairment and radiculopathy at either office visit. He reported that plaintiff continued to work with Dr. Atluri, and he noted that she was "still trying to decide what to do with her lumbar spine" and he had told her arrangements could be made at any time. (Tr. 383). The most recent treatment in the record from Dr. Atluri dated February 2017 reports unremarkable and largely normal physical examination findings except for some tenderness and decreased sensation to the right lower extremity. (Tr. 436-38).

Thus, although the medical record documents objective findings related to plaintiff's back pain and other symptoms, the ALJ reasonably found that this objective evidence did not fully corroborate plaintiff's subjective allegations of debilitating back pain and radiculopathy. Plaintiff has not cited objective medical evidence in the record and has not submitted a medical opinion by a treating or examining physician which documents debilitating back pain and radiculopathy and shows the ALJ's finding is unsupported.

Second, the record shows that the ALJ took into consideration that plaintiff's back pain and radiculopathy had been treated with conservative measures consisting of medications and other non-surgical methods. (Tr. 59-60). Plaintiff was initially referred to physical therapy in December 2014 for treatment of her lumbago. (Tr. 59, citing Tr. 276). The last physical therapy record dated February 20, 2015, noted that plaintiff's prognosis for meeting her short and

19

long-term goals was good and that she may want to continue physical therapy once or twice a week. (*Id.*, citing Tr. 305). Dr. Atluri's December 2015 records report that plaintiff had tried epidural injections, physical therapy, and chiropractic treatments without success, but Dr. Atluri suggested that plaintiff be treated with a low dose of opioids. (Tr. 352). While Dr. Rohmiller eventually recommended that plaintiff pursue a surgical option, this was after the date last insured in May 2016. (Tr. 60, citing Tr. 376). Plaintiff indicated she wanted to avoid surgery, and she had not undergone surgery for her back pain as of the date of the ALJ hearing. (Tr. 59-60, citing Tr. 352; *see* Tr. 77). Further, Dr. Atluri opined that no additional procedures were required in February 2017 and advised plaintiff to continue with the opioid medication, which plaintiff reported helped her pain and improved her functioning. (Tr. 60, citing Tr. 437-38). The ALJ reasonably relied on plaintiff's conservative history of treatment primarily with medication and other non-surgical methods to find that her subjective complaints of pain were not entirely substantiated. *See Kepke*, 636 F. App'x at 631; *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 806 (6th Cir. 2011).

Third, plaintiff challenges the ALJ's failure to fully accept her subjective complaints related to her mental impairments. Plaintiff alleges that the ALJ erroneously relied on a lack of objective evidence even though mental impairments do not always produce objective examination findings. (Doc. 6 at 5, citing *Winning*, 661 F. Supp.2d at 821) (the ALJ did not properly reject treating psychologist's assessment by stating as the sole reason, without elaboration, that the assessment was based substantially on the subjective complaints and statements of the claimant, who was not entirely credible)). Plaintiff further alleges that the ALJ improperly relied on plaintiff's failure to obtain treatment for serious psychological symptoms, without taking into account her alleged inability to pay for mental health treatment as

required under SSR 16-3p. (*Id.*, citing Tr. 84-85). In addition, plaintiff asserts that the ALJ failed to credit all of her mental health complaints in light of the reviewing psychologists' finding that her "nervous complaints," which include trouble focusing on one task for 30 minutes in 2015 and contact with only one friend, "does not show any ability to sustain work for 40 hours a week." (*Id.* at 5, 8, citing Tr. 215).

As discussed *supra* in connection with plaintiff's first and second assignments of error, the ALJ was not bound to defer to the reviewing psychologists' assessment and to accept all of plaintiff's allegations of debilitating limitations. The ALJ thoroughly reviewed the evidence and concluded based on his review that plaintiff's mental health complaints were not fully supported by the record. The ALJ found that despite plaintiff's allegations of disabling mental impairments, there was no evidence of on-going counseling or treatment for her mental impairments, and the only debilitating impairment she mentioned at the ALJ hearing was her back impairment. (Tr. 60; *see* Tr. 329- Dr. Groneck reported that plaintiff was not involved in mental health treatment as of March 2015 and plaintiff denied a history of mental health treatment). The Sixth Circuit has cautioned that an ALJ "must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state" since the "very failure to seek treatment" can for some be a "symptom of the disorder itself." *White v. Comm'r of Social Security*, 572 F.3d 272, 283 (6th Cir. 2009) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (listing cases that recognize a mentally ill person's noncompliance with treatment "can be . . . the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (citations, internal quotation marks, and brackets omitted)). *See also* SSR 63-p, 2017 WL 5180304, *10 (a claimant with a mental impairment "may not be aware that he or she has a disorder that requires treatment."). Here, though, there

21

is no information in the record that shows plaintiff's mental impairment precluded her from obtaining treatment.

A lack of funds may likewise justify a failure to seek medical treatment given that a claimant "may not be able to afford treatment and may not have access to free or low-cost medical services." *See* SSR 63-p, 2017 WL 5180304, *10. Plaintiff suggests in the statement of errors that she did not seek mental health treatment because she has "trouble with her medical insurance for treatment" due to difficulty paying the deductible under her husband's insurance policy. (Doc. 6 at 5, citing Tr. 84-85). However, plaintiff did not testify at the hearing that her financial situation or insurance issues were factors in her failure to seek mental health treatment. Plaintiff testified only that she had received an epidural injection in her lower back in February of 2017, which helped her sciatica, and she planned to have more once the $6,000.00 deductible on her husband's health insurance policy was met. (Tr. 84-85). She did not testify, and the evidence does not indicate, that the substantial insurance deductible or other financial constraints precluded plaintiff from obtaining medical treatment during the period of alleged disability. Rather, plaintiff was consistently seen by several different providers and treated for her physical impairments beginning in 2014, even though she testified she did not have health insurance when she first started treatment with a doctor and a surgeon for her back. (*See* Tr. 74-75). Further, plaintiff was able to obtain psychotropic medication - Xanax - which was prescribed by her physician for her "nervous impairments." (Doc. 6 at 5; *see* Tr. 275- 12/2014, Tr. 279- 7/2014, Tr. 329- 3/2015, Tr. 423- 10/2015; Tr. 419- 8/2016). Plaintiff's testimony therefore does not establish that she was unable to obtain mental health treatment due to a lack of financial resources. The ALJ reasonably relied on a history of no outpatient or inpatient mental

health treatment to find that plaintiff's subjective complaints of debilitating depression were not fully supported by the record. (Tr. 60, citing Tr. 329-30).

Finally, the ALJ reasonably considered plaintiff's daily activities, including cooking, housekeeping, caring for her dogs, grocery shopping, paying bills, and driving, and found those activities were not consistent with her allegations of debilitating physical and mental impairments. (Tr. 61). Plaintiff suggests that the ALJ erroneously considered her daily activities in finding that her subjective complaints were not fully supported by alleging: "The daily activities are done when able and do not show any ability to sustain work for 40 hours a week. See Tr. 79-80 and 83 on this (does dishes for 15 minutes and then sits down). She can lift a gallon of milk (eight pounds) about four times only. She drives for 15 minutes (Tr. 86)." (Doc. 6 at 8). Plaintiff has not shown the ALJ committed any error in this regard. An ALJ may "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997); *Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)). The record substantially supports the ALJ's finding that plaintiff's daily activities were not fully consistent with her subjective allegations of debilitating physical and mental impairments.

Plaintiff has not shown that the ALJ erred in evaluating her subjective complaints. Plaintiff suggests that if her testimony "is credible," she cannot work for 40 hours a week under SSR 16-3p. (Doc. 6 at 8). But the ALJ did not find plaintiff's testimony of her limitations to be fully consistent with the objective and other medical evidence for reasons he thoroughly considered and explained as required under 20 C.F.R. § 404.1529 and SSR 16-3p. Plaintiff's third assignment of error should be overruled.

### 3. The ALJ's hypotheticals to the VE (fourth assignment of error)

Plaintiff next argues that the ALJ erred at the last step of the disability analysis set out in 20 C.F.R. § 404.1520. The burden of proof shifts to the Commissioner at this step to show "by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (internal quotation marks omitted). "[S]ubstantial evidence may be produced through reliance on the testimony of a vocational expert [] in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id*. at 512-13 (internal quotation marks omitted). Here, plaintiff contends that the hypothetical questions that the ALJ posed to the VE did not accurately portray her impairments because they omitted restrictions to account for (1) "superficial contact" as assessed by the state agency reviewing physicians (Tr. 120); (2) limitations on "sustained focus and completing tasks quickly enough" imposed by examining psychologist Dr. Groneck (Tr. 332-33); and (3) the need to alternate sitting and standing if working 40 hours per week due to low back pain and radiculopathy. (Doc. 6 at 9). Plaintiff acknowledges that no treating doctor completed a functional capacities assessment, but she alleges that the conclusions of the examining psychologist, Dr. Groneck, and the state agency reviewing sources "impose further work-related limitations on [plaintiff] if she tries to work 40 hours a week." (*Id*.).

Plaintiff has not shown that the ALJ erred by posing improper hypothetical questions to the VE. The hypothetical questions incorporated all of the functional limitations that the ALJ found were substantially supported and which the ALJ incorporated into the RFC, including limitations to simple routine tasks, no production rate work, simple work-related decisions, frequent interaction with supervisors, occasional interaction with coworkers, no interaction with

24

the public as part of her job duties, and occasional changes in the work setting.  (*See* Tr. 57, 89).

Plaintiff has not shown that the ALJ's RFC assessment was improper.  *See supra*, pp. 8-14.

The ALJ properly accounted for the limitations on concentration, persistence and pace and other

mental functional limitations assessed by Dr. Groneck and the reviewing psychologists.   In

addition, the ALJ reasonably omitted from the RFC an alternate sit/stand restriction, which is not

supported by the record.  *Id.* at 13.   Plaintiff has not cited evidence that shows the ALJ

erroneously omitted from the hypotheticals any other restrictions that the ALJ found to be

substantiated by the evidence.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,

1235 (6th Cir. 1993); *see also Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th

Cir. 2014).

Plaintiff's fourth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the

docket of the Court.

Date: _5/31/19_

Karen L. Litkovitz
United States Magistrate Judge

25

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GINA MARIE KIRKHART,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-241
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).